1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**EASTERN DIVISION**

11

12   SAMUEL CHRISTOPHER BELMONTEZ, )     No. ED CV 14-1590-PLA
                                    )
13            Plaintiff,            )
                                    )
14        v.                        )     **MEMORANDUM OPINION AND ORDER**
                                    )
15   CAROLYN W. COLVIN, ACTING      )
     COMMISSIONER OF SOCIAL         )
16   SECURITY ADMINISTRATION,       )
                                    )
17            Defendant.            )
     _____ )

18

19                              **I.**

20                        **PROCEEDINGS**

21        Plaintiff filed this action on August 7, 2014, seeking review of the Commissioner's denial

22   of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income

23   ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge

24   on September 10, 2014, and September 29, 2014. Pursuant to the Court's Order, the parties filed

25   a Joint Stipulation on April 24, 2015, that addresses their positions concerning the disputed issue

26   in the case. The Court has taken the Joint Stipulation under submission without oral argument.

27   /

28                              **II.**

1

**BACKGROUND**

2      Plaintiff was born on January 28, 1971. [Administrative Record ("AR") at 204, 208.] He has

3  past relevant work experience as an auto detailer.  [AR at 35, 58.]

4      On September 14, 2011, plaintiff filed an application for a period of disability and DIB, and

5  an application for SSI payments, alleging that he has been unable to work since November 20,

6  2006.   [AR at 27, 204-07, 208-15.]   After his applications were denied initially and upon

7  reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge

8  ("ALJ").  [AR at 27, 148-49.]  A hearing was held on November 28, 2012, at which time plaintiff

9  appeared represented by an attorney, and testified on his own behalf.  [AR at 43-60.]  A vocational

10  expert ("VE") also testified.  [AR at 57-60.]  On January 10, 2013, the ALJ issued a decision

11  concluding that plaintiff was not under a disability from November 20, 2006, the alleged onset

12  date, through January 10, 2013, the date of the decision. [AR at 27-37.] Plaintiff requested review

13  of the ALJ's decision by the Appeals Council.  [AR at 21-22.]  When the Appeals Council denied

14  plaintiff's request for review on June 6, 2014 [AR at 1-5], the ALJ's decision became the final

15  decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam)

16  (citations omitted).  This action followed.

17

18

**III.**

19

**STANDARD OF REVIEW**

20      Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

21  decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

22  evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622

23  F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

24      "Substantial evidence means more than a mere scintilla but less than a preponderance; it

25  is such relevant evidence as a reasonable mind might accept as adequate to support a

26  conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

27  and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

28  (same).  When determining whether substantial evidence exists to support the Commissioner's

1  decision, the Court examines the administrative record as a whole, considering adverse as well

2  as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted);

3  see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

4  consider the entire record as a whole and may not affirm simply by isolating a specific quantum

5  of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is

6  susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,

7  528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin.,

8  466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

9  ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.")

10  (citation omitted).

11

12                                                    **IV.**

13                          **THE EVALUATION OF DISABILITY**

14          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

15  to engage in any substantial gainful activity owing to a physical or mental impairment that is

16  expected to result in death or which has lasted or is expected to last for a continuous period of at

17  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

18  1992).

19

20  **A.      THE FIVE-STEP EVALUATION PROCESS**

21          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

22  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

23  828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

24  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

25  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

26  substantial gainful activity, the second step requires the Commissioner to determine whether the

27  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

28  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

1  If the claimant has a "severe" impairment or combination of impairments, the third step requires

2  the Commissioner to determine whether the impairment or combination of impairments meets or

3  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

4  subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If

5  the claimant's impairment or combination of impairments does not meet or equal an impairment

6  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

7  sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

8  and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

9  past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

10  case of disability is established. Id. The Commissioner then bears the burden of establishing

11  that the claimant is not disabled, because he can perform other substantial gainful work available

12  in the national economy. Id. The determination of this issue comprises the fifth and final step

13  in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin,

14  966 F.2d at 1257.

15

16  **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

17       At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

18  November 20, 2006, the alleged onset date.[1] [AR at 29.] At step two, the ALJ concluded that

19  plaintiff has the severe impairments of mood disorder; recurrent headaches; and right hand

20  sensory deficit. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment

21  or a combination of impairments that meets or medically equals any of the impairments in the

22  Listings. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2]

23

---

24  [1]   The ALJ concluded that plaintiff met the insured status requirements of the Social
25  Security Act through June 30, 2011. [AR at 29.]

26  [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
27  three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149,
28                                                                          (continued...)

1    to perform a full range of work at all exertional levels but with the following nonexertional

2    limitations:

> 3    [T]he claimant is precluded from working on unprotected heights or on dangerous
> 4    machinery; the claimant is limited to frequent gross manipulation with his right hand;
>      he is limited to simple and repetitive tasks; the claimant cannot have intense and
> 5    sustained interaction with the public, co-workers, or supervisors.

6    [AR at 30-31.]   At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ

7    concluded that plaintiff is able to perform his past relevant work as an auto detailer.  [AR at 35,

8    58.] The ALJ made the alternative finding at step five, based on plaintiff's RFC, vocational factors,

9    and the VE's testimony, that there are jobs existing in significant numbers in the national economy

10   that plaintiff can perform, including work as a "hand packager" (Dictionary of Occupational Titles

11   ("DOT") No. 920.587-018), "warehouse worker" (DOT No. 922.687-058), and "industrial cleaner"

12   (DOT No. 381.687-018).  [AR at 36, 58-59.]  Accordingly, the ALJ determined that plaintiff was not

13   disabled at any time from the alleged onset date of November 20, 2006, through January 10,

14   2013, the date of the decision.  [AR at 37.]

15

16                                                    **V.**

17                                        **THE ALJ'S DECISION**

18   **A.      PLAINTIFF'S CONTENTION**

19          Plaintiff contends that the ALJ erred when he failed to provide specific and legitimate

20   reasons for rejecting probative medical source opinions.    [Joint Stipulation ("JS") at  4.]

21   Specifically, he argues the ALJ should have assigned significant weight to plaintiff's treating

22   physician, Inderjit Seehrai, M.D., and assigned too much weight to the opinions of the consultative

23   psychological examiner, Arika Johnson, Psy.D., and the psychiatric consultative examiner, Jason

24   H. Yang, M.D.[3]  [JS at 4-9.]

25   _____

26       [2](...continued)
     1151 n.2 (9th Cir. 2007) (citation omitted).

27

28       [3]   Defendant concedes that the ALJ erred in relying on Dr. Yang's report.  [JS at 9 n.2 (citing JS
                                                                                        (continued...)

1    As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision

2    of the ALJ.

3

4    **B.    MEDICAL OPINIONS**

5        **1.    Legal Standard**

6        "There are three types of medical opinions in social security cases:  those from treating

7    physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec.

8    Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.  "As a

9    general rule, more weight should be given to the opinion of a treating source than to the opinion

10   of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d

11   995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613

12   F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to

13   greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528

14   F.3d at 1198.

15       "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical

16   opinion based on clear and convincing reasons."  Carmickle, 533 F.3d at 1164 (citation and

17   internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

18   "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate

19   reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164

20   (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763

21   F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012.  The ALJ can meet the requisite

22   specific and legitimate standard "by setting out a detailed and thorough summary of the facts and

23   conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157

24   F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than the

25   _____

26   (...continued)
     at 8) (noting that the Administration terminated Dr. Yang as an approved provider because, among

27   other reasons, his medical reports included duplicate or identical mental status examinations for
     multiple claimants).] Defendant also argues that the error was harmless because it was not "outcome

28   determinative." [Id.]  For the reasons discussed herein, the Court agrees with defendant.

1  [treating or examining] doctors', are correct."  Id.

2

3  **2.  Dr. Seehrai**

4  Dr. Seehrai, a psychiatrist, states that he first treated plaintiff on August 2, 2007.  [AR at

5  295.]  On May 1, 2008, Dr. Seehrai completed a mental disorder questionnaire form.  [AR at 293-

6  96.]  Dr. Seehrai noted that plaintiff is not able to keep appointments and has "several no-shows"

7  due to his impaired memory; often is hopeless and struggles with motivation; attempted suicide

8  sixteen years earlier by shooting himself in the abdomen[4]; has social anxiety and doesn't do well

9  around people; is unable to sleep without the assistance of medication; hears voices of people

10  calling his name; hears an echo in his head; has difficulty asking for assistance when needed; is

11  very confused and forgetful; has difficulty understanding simple instructions; appears to be of

12  average or slightly below average intelligence, "but this may be due to his limited coping skills";

13  may have some residual impairment from a head injury he suffered from another gunshot;

14  experiences severe headache and cold sweats at night; has poor problem-solving skills and poor

15  impulse control; becomes easily frustrated and has difficulty controlling his anger; appears very

16  confused; sometimes needs reminders to launder his clothes; is learning how to use public

17  transportation; participates in activities with others on a limited basis due to his depression and

18  anxiety; has difficulty completing tasks; is memory impaired; and has auditory and visual

19  hallucinations that affect the social skills, concentration, motivation, and decision making

20  conducive to the work environment.  [AR at 293-95.]  Dr. Seehrai diagnosed plaintiff with PTSD

21  and mood disorder, not otherwise specified, and stated that plaintiff's mental health condition is

22  expected to be permanent.  [AR at 295.]

23  Preliminarily, the Court finds that the ALJ did not completely *reject* Dr. Seehrai's opinion --

24  instead, he "considered, but [did] not give significant weight" to Dr. Seehrai's opinion.  [AR at 33.]

25  _____

26  [4]  Plaintiff testified at the hearing that when he was approximately 16 years old, he accidently shot
   himself when a gun he was carrying slipped out of his hand, he tried to grab it, and shot himself in the

27  abdomen.  [AR at 51; see also AR at 335-36.]  Plaintiff also testified that in 1995 he was shot in the
   head by a friend who was trying to play a joke on plaintiff and did not know the gun was loaded.  [AR

28  at 52; see also AR at 262, 335.]

1    Indeed, consistent with Dr. Seehrai's general findings, the ALJ included limitations in plaintiff's

2    RFC to simple, repetitive tasks and limited interaction with the public, co-workers, or supervisors.

3    [AR at 31.]  The ALJ specifically found that Dr. Seehrai's opinion was not entitled to controlling

4    weight because the questionnaire did not "document significant positive objective clinical or

5    diagnostic findings to support the assessed functional limitations," and the limitations were

6    "inconsistent with the record as a whole, including [plaintiff's] abilities to perform a variety of

7    activities of daily living." [Id.]  The ALJ also noted that Dr. Seehrai's only treatment note in the

8    record, which reflected a mental status examination on September 5, 2007, indicated only that

9    other than having poor insight and judgment and a depressed mood, plaintiff's mental status was

10   otherwise "within normal limits." [Id. (citing AR at 302-03).]  Moreover, although Dr. Seehrai

11   reported that plaintiff was seen once per month between August 2, 2007, and March 6, 2008 [AR

12   at 295-96], he also indicated that plaintiff had not kept several of his appointments during that time

13   period.  [AR at 923.]  In fact, at best the evidence shows that plaintiff saw Dr. Seehrai only three

14   times in that seven-month period, i.e., on August 2, 2007 (for which there is no treatment note),

15   September 5, 2007, and March 6, 2008.  [AR at 33 n.1, 293-96, 302-03.]

16         Here, other than the one mental status evaluation Dr. Seehrai conducted that showed

17   unremarkable findings, a review of the record substantiates the ALJ's finding that there was

18   nothing in Dr. Seehrai's treatment records to otherwise support his May 2008 findings.  An ALJ

19   is entitled to discount the opinions of a doctor that are conclusory, brief, and unsupported by

20   clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Nor did Dr. Seehrai

21   in his report refer to any supportive objective evidence to support his conclusions.  Batson v.

22   Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly discounted treating

23   doctors' opinions because they were in the form of a checklist, did not have supportive objective

24   evidence, were contradicted by other statements and assessments of the claimant's medical

25   condition, and were based on the claimant's descriptions of pain).  The ALJ also properly found

26   that plaintiff's daily activities, which include walking his dog, visiting friends and family, reading,

27   listening to music, maintaining his personal care, preparing his meals, cleaning, doing laundry,

28   riding in a car, going out alone, shopping for clothes and other items, and managing his own

1  finances, were inconsistent with Dr. Seehrai's findings.[5]  An inconsistency between a treating

2  physician's opinion and a claimant's daily activities may be a specific and legitimate reason to

3  discount a treating physician's opinion where, as here, a holistic review of the record supports this

4  finding.  Ghanim, 763 F.3d at 1162.  Additionally, as the ALJ also noted, "[t]here is no medical

5  source statement from *any source* that suggests functional limitations more restrictive than the

6  [RFC] found in this decision," including, therefore, Dr. Seehrai's opinion.  [AR at 34 (emphasis

7  added).]  Accordingly, the Court concludes that the ALJ provided specific and legitimate reasons

8  supported by substantial evidence for not giving controlling weight to Dr. Seehrai's opinion.

9        Because he did not give controlling weight to Dr. Seehrai's opinion, the ALJ also noted that

10  he "weighed all the medical opinions by considering multiple factors," including testing and

11  consultative evaluations by specialists; supportability, including the degree of explanation and

12  support by objective evidence; consistency with the record as a whole; degree of specialization

13  in the area of medicine involved; level of awareness of other evidence in the record; and level of

14  understanding of Social Security disability programs and requirements.  [AR at 33.]  Based on this

15  review, the ALJ gave "significant . . . but not full weight" to the opinions of consultative examiners

16  Dr. Johnson and Dr. Yang, and to the State agency consultants.  [Id.]  He found that the opinions

17  of these sources were "generally consistent" in assessing plaintiff as able to perform a full range

18  of work at all exertional levels, but with some nonexertional limitations, "with some differences in

19  the degree of specific function-by-function limitations."  [Id.]  He also found these opinions

20  "reasonable and supported by the record as a whole."  [AR at 33-34.]  In determining plaintiff's

21  RFC, the ALJ adopted the "specific restrictions on a function-by-function basis that are best

22  supported by the objective evidence as a whole."  [AR at 34.]  He also found that the consultative

23  examiners' opinions were comprehensive and not contradicted by any other medical objective

24

25    [5]  For instance, although Dr. Seehrai stated that patients with memory problems may be
26  "unable to follow and/or understand written and oral instructions" [See AR at 295 ("Patient has
   difficulty completing tasks.  His memory is so impaired; this makes patients unable to follow and/or
27  understand written and oral instructions.")], Dr. Seehrai also noted that plaintiff is learning how to
   use public transportation, needs no assistance with daily activities, and can manage his own
28  funds. [Id.]

1    records.  [Id.]  Finally, as previously noted, the ALJ found that "[t]here is no medical source

2    statement from any source that suggests functional limitations more restrictive than the [RFC]

3    found in this decision."  [Id.]

4    Here, the ALJ gave significant weight to the October 27, 2011, evaluation of the

5    psychological consultative examiner, Dr. Johnson. [AR at 33, 229-34.] Dr. Johnson indicated she

6    had reviewed medical records showing that plaintiff had been shot on two occasions -- once

7    approximately sixteen years earlier, and once within the past year.[6] [AR at 330.] Plaintiff told Dr.

8    Johnson that he saw a psychiatrist for depression after he was shot[7] but that he was not currently

9    seeing a psychiatrist, or in therapy, and had never been hospitalized for psychiatric purposes, or

10   been suicidal.    [Id.]    He told Dr. Johnson he was depressed and experienced auditory

11   hallucinations, but later stated that the auditory hallucinations were "simply ringing in his ears that

12   occurred after he was shot." [Id.] He denied any "[t]rue visual and auditory hallucinations." [Id.]

13   Dr. Johnson conducted an interview and mental status examination, and administered several

14   standardized tests. [AR at 329, 331.] She reported that plaintiff was cooperative and friendly, and

15   his speech was clear and understandable with average response time; his mood was mildly

16   dysphoric, and his affect was full; formal testing showed some memory deficits, but his attention

17   and concentration were adequate for answering interview questions and following test instructions;

18   his fund of knowledge, insight, and judgment were good; test results showed mild impairment in

19   all forms of memory, including auditory, visual, immediate, and delayed, and borderline intellectual

20   functioning; and his attention was intact.  [AR at 331-33.]  Dr. Johnson diagnosed plaintiff with

21   adjustment disorder, chronic with depressed mood, and noted borderline intellectual functioning.

22   [AR at 333.] She opined that based on her assessments, plaintiff would be able to understand,

23   remember, and carry out short, simple instructions with no difficulty; would have mild difficulty

24   understanding, remembering, and carrying out detailed and complex instructions; would be able

25

26   [6]    But see supra note 4 (plaintiff indicated he was shot in the abdomen at age 16, which would
     have been around 1986, and then in the head in 1995).

27

28   [7]    It is not clear if this was after the first or the second shooting incident.  Plaintiff does not appear
     to have mentioned to Dr. Johnson his 2007 visit(s) to, or any treatment by, Dr. Seehrai.

1   to make simple work-related decisions without special supervision; would not have difficulty

2   complying with job rules such as safety and attendance; would have no difficulty responding to

3   changes in a normal workplace setting; would have mild difficulty maintaining persistence and

4   pace in a normal workplace setting; and would have moderate deficits in interpersonal functioning,

5   and in interacting appropriately with supervisors, co-workers, and peers on a consistent basis.

6   [AR at 333-34.] Because Dr. Johnson's opinion is supported by her independent clinical findings,

7   such findings constitute substantial evidence, and the ALJ did not err in assigning significant

8   weight to that opinion. Tonapetyen, 242 F.3d at 1149; Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.

9   2007).

10         Consistent with Dr. Johnson's findings, the reviewing physicians, Drs. Amado, Williams, and

11   Loomis [see, e.g., AR at 61-92, 97-124, 312-25], based their findings on the available medical

12   record and, therefore, their opinions, which were consistent with the findings of Dr. Johnson,

13   independently and in combination, constitute substantial evidence supporting the ALJ's decision.

14   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (findings of a nontreating, nonexamining

15   physician can amount to substantial evidence, so long as other evidence in the record supports

16   those findings).

17         Based on the foregoing, the ALJ provided legally sufficient reasons for not giving controlling

18   weight to the opinion of Dr. Seehrai, and for giving more weight to the opinions of the consultative

19   examining source, and the state agency reviewing physicians.

20   /

21   /

22   /

23   /

24   /

25   /

26   /

27   /

28

1

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that:  (1) plaintiff's request for reversal, or in the alternative, remand, is denied; and (2) the decision of the Commissioner is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  May 4, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

12